---

### CROSS *v.* DAY.

BROKERS—COMMISSIONS—CONTRACTS.
> Plaintiff, a broker, could recover commissions under a contract to pay him two per cent. commission if he should procure a purchaser through the agency of another broker, with whom plaintiff was associated and had listed the farm at a net price; the terms of the contract providing in substance as above stated were not ambiguous or uncertain or open to the construction that plaintiff must himself find a purchaser who would buy the land through the other agency.[1] OSTRANDER AND STONE, JJ., dissenting.

Error to Genesee; Wisner, J. Submitted November 19, 1912. (Docket No. 110.) Decided January 3, 1913.

Assumpsit by James L. Cross against Homer A. Day and Arthur G. Bishop for broker's commissions. Judgment for plaintiff. Defendants bring error. Affirmed.

*Farley & Selby*, for appellants.

*McFarlan & Wilson*, for appellee.

BROOKE, J. The record in this case conclusively shows

[1] As to what constitutes listing of property or employment of broker within a contract promising a commission therefor in case the property is withdrawn or no sale made, see note in 24 L. R. A. (N. S.) 562.

that defendants' farm was listed with the Hayes Agency through the instrumentality of plaintiff. Before defendants made either of the contracts, they knew that plaintiff was listing farms for S. V. R. Hayes. They likewise knew that plaintiff was in doubt as to his right to accept a commission from them, as well as a $50 fee from Hayes, in case the farm was sold. They knew that he wrote to Hayes for permission to accept such commission and got it, and they agreed to pay him 2 per cent. of the selling price if they sold their farm through Hayes at a price net to them. After this arrangement (not in writing) was made, plaintiff introduced the representative of Hayes to defendants, and that representative and defendants thereupon executed Exhibit B. Whether Exhibit A (the contract between plaintiff and defendants) was entered into immediately before or after the execution of Exhibit B is a matter of no consequence, as all the parties knew exactly what they were contracting about. All of them knew that during the life of the Hayes contract he alone had the right to sell the farm, unless it was sold by defendants themselves. All knew that the price named in the Hayes contract must be net to defendants, and that Hayes must make his commission by raising the selling price.

The farm was sold to a purchaser procured through Hayes for $60 per acre, and defendants paid Hayes the $2.50 per acre he had added to their price, as they had agreed to do in Exhibit B. They therefore have paid no commission whatever for the sale of the farm, but have received their full net selling price. I am unable to observe any ambiguity whatever in the contract Exhibit A. In it defendants agree to pay plaintiff 2 per cent. of the purchase price of the farm, provided he procures them a purchaser *through the agency of S. V. R. Hayes* within a certain limited period. He has procured a purchaser through Hayes, who bought defendants' farm within the time limited, at the price (net to them) specified in the contract Exhibit B. Why has he not earned his commis-

sion? While I am of opinion that he would be entitled
to recover under his contract if he had done no more than
to list the farm with Hayes, thus setting in motion the
efficient cause which resulted in a sale satisfactory to de-
fendants, yet the record shows that he was not without in-
fluence in inducing Mr. Wilmot to purchase; indeed, that
influence may have been a determining factor. I am of
opinion that when the testimony was closed the plaintiff was
entitled upon the admitted or undisputed facts to a directed
verdict.

The judgment should stand affirmed.

STEERE, C. J., and MOORE, McALVAY, KUHN, and
BIRD, JJ., concurred with BROOKE, J.

OSTRANDER, J. (*dissenting*). Plaintiff recovered a ver-
dict and judgment in a suit upon the following contract:

"FLINT, MICHIGAN, April 2, 1909.
"I hereby agree to pay James L. Cross two per cent.
of the purchase price of my farm as commission, provided
said James L. Cross procures me a purchaser for my farm,
situate in the township of Richfield, containing 370 acres,
through the agency of S. V. R. Hayes, Grand Rapids,
Michigan. Time limited for sale to December 15, 1909.
          [Signed]          "A. G. BISHOP.
                              "HOMER A. DAY."

Defendants made another written agreement, here set
out:

"FLINT, MICHIGAN.
"S. V. R. HAYES,
          "Grand Rapids, Michigan.
"We hereby give you the exclusive agency and authorize
you to sell our farm in Genesee county, Michigan, describ-
ed as follows: * * * For the sum of $57.50 per acre net
to us on the following terms: One thousand dollars at
the time of sale, one thousand dollars more when posses-
sion is given, balance in payments of two thousand or
more each and every year with interest at 6 per cent.
We agree that you shall add to our price whatsoever sum
you may see fit for your services for making the sale and

deducting such amount from the purchase price and turn over to us the balance, and we will not make a lower price on farm than you do to your customers during the life of this agency, nor will we put any obstacles in your way in your effort to make sale of farm. We agree to enter into a contract of sale with any person you may sell farm to at the time sale is made and when such purchaser has paid $10,000 we will then give him or her a warranty deed of said farm taking back a mortgage on the same for the unpaid balance of the purchase price, and payable not later than six years from date of mortgage.

"At the time you make the sale of the farm, or as soon thereafter as possible, not to exceed ten days, we will deliver to you or the buyer a complete abstract of title and tax history of said farm which shall show a perfect record title.

"We reserve the right to sell this herein described land, but to none of your customers and in case we do make a sale independent of you we agree to pay you two per cent. for your services except in selling to Mr. Bolan.

"This agency shall be in force and continue from this date up to and including December 15, 1909.

"Dated at Flint, Michigan, this 2d day of April, 1909.

"HOMER A. DAY.
"A. G. BISHOP.
"S. V. R. HAYES.
"By J. F. ALWARD, Agent."

A sale of the farm was made by Mr. Hayes, and was made effectual by conveyance of the farm by defendants to the purchaser. It was made before December 15, 1909. Plaintiff did not procure the purchaser. It is not pretended that he did. It is plaintiff's theory that if a sale of the farm was made by or through the Hayes Agency he (plaintiff) was to receive a commission of 2 per cent. of the selling price. If this theory is supported by facts, then an examination of the two contracts discloses that if defendants themselves sold the farm they were to pay to Hayes 2 per cent. of the selling price (unless Bolan bought the farm); if the Hayes Agency sold it, Hayes was to have all he could get over the upset price per acre, and defendants were to pay plaintiff 2 per cent. of the purchase price. This would indicate an almost uncontrol-

lable desire on the part of defendants to place themselves in a position where they would have to pay some one 2 per cent. of the selling price of the farm if it should be sold.

Plaintiff says the main question in dispute is whether plaintiff was a mere middleman in bringing Day and Bishop and the Hayes Agency together, or whether he was an agent with full power to make sale. I do not so understand the record. The main question is the proper construction of the contract sued upon. Defendants contended, and contend, that, by the terms of the contract, plaintiff, in order to earn his commission, was required to procure a purchaser for the farm. In two motions for a peremptory instruction a ground asserted was that it appeared that the plaintiff did not procure a purchaser for the farm through the agency of S. V. R. Hayes, of Grand Rapids, according to the terms of the contract. The court instructed the jury:

"Now, that contract on its face shows a consideration, a valuable consideration, and is absolute, in the judgment of the court, and when the plaintiff, who has the burden of establishing his case by a preponderance of the evidence, introduces that contract in the case, has shown by a preponderance of the evidence that in pursuance of that contract he caused this farm to be listed with the Hayes Agency, that through the advertising inserted by the Hayes Agency in various papers throughout the country Mr. Wilmot, who lives down in the State of Illinois somewhere, saw the advertisement and came to Grand Rapids, and was by the Hayes Agency sent here and by Mr. Cross taken to the farm and its purchase in some degree urged upon him, and that afterwards the farm actually was sold to this Mr. Wilmot, whom the evidence shows was an entire stranger to the defendants in this case, then up to that point, and at that point, if there had been nothing further in the case, it would have been the duty of the court to have instructed you that you find a verdict in favor of the plaintiff."

And further:

"It is undisputed that the defendants, Bishop and Day,

signed the contract, agreeing to give Mr. Cross a commission as provided in the contract. It is also undisputed that the land was sold to Wilmot before the Cross contract expired as to the time of performance, and that the commissions would amount to $425.50. If you find that Mr. Cross called the attention of the Hayes Agency to the Bishop and Day farm, and that they undertook the selling of the same, and that the Hayes agency procured Mr. Wilmot as a purchaser, and the farm was sold to Mr. Wilmot through the efforts of the Hayes agency, and you find that Mr. Cross had nothing to do with fixing the price that Bishop and Day were to receive for their farm, or the terms, then he is entitled to his commissions under the contract in evidence. I add:

" 'Unless you find in defendants' favor under defendants' fourth and fifth requests, which I will give you a little later.' "

It is plain, therefore, that the case was submitted to the jury upon plaintiff's theory. In any event, plaintiff's theory cannot survive a construction of the contract which requires plaintiff to do more than procure the farm to be listed for sale by Hayes, or the Hayes Agency, if a sale was made by Hayes. If, therefore, plaintiff was required by his contract to do more than this, he has not performed, and should not recover the commission.

Whether the words employed in the writing sued upon are themselves interpreted, or whether, treated as an ambiguous statement, they are interpreted in the light of surrounding circumstances, in either case they must, in my opinion, be given a meaning opposed to the plaintiff's theory and contention. Considering the writing alone, some meaning must be given to the words "providing said James L. Cross procures me a purchaser for my farm." They are wholly unnecessary words if what was intended was that Cross was to be paid a commission if a sale was made through the Hayes Agency. To express that meaning and intention, the words above quoted might have been and presumably would have been omitted. The words quoted having been used, the writing imports that plaintiff was to procure a purchaser—was to interest himself to find a purchaser—who would, through Hayes, buy

the farm. Considered in the light of all the circumstances, the same intention and meaning is, in my opinion, clearly made out. The facts known to all parties were these: Hayes paid for every farm listed with him and sold by him $50. This farm was listed with Hayes by Cross. That is to say, Cross informed Hayes of the fact that defendants had a farm for sale, leaving Hayes and defendants to make their own bargain. Cross expected to receive $50 from Hayes if Hayes sold the farm. As matter of fact, plaintiff has received the $50 from Hayes. Plaintiff says he did not know the terms of the arrangement made by Hayes and defendants. Whether he did or not is immaterial. The contract sued on imports that the farm was in the hands of Hayes for sale, upon some terms. Plaintiff and defendants knew it, and plaintiff's contract, in effect, recites it. This being so, is it reasonable to suppose that, if Hayes sold the farm, defendants were to pay to plaintiff something more than $460 as a mere gratuity? We come again to the meaning of the words put into plaintiff's contract and heretofore quoted. Defendants desired to sell their farm, and had fixed an upset and minimum price per acre which they were willing to accept. They had so contracted with Hayes that he had the exclusive right to sell it. But if plaintiff would bestir himself and find a customer who would deal with Hayes—procure a buyer—they were willing to pay him a commission equal to the one they had agreed to pay Hayes if they (the defendants) themselves found a buyer. This, it seems to me, is what the contract means. In this view the court was in error in refusing the peremptory instruction asked for by defendants. No other errors need be considered.

The judgment should be reversed, and no new trial granted.

STONE, J., concurred with OSTRANDER, J.